# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 41811

|  |  |
|---|---|
| STATE OF IDAHO, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> COREY ALLEN THIEL, <br><br> Defendant-Respondent. | ) <br> ) Boise, January 2015 Term <br> ) <br> ) 2015 Opinion No. 27 <br> ) <br> ) Filed: February 27, 2015 <br> ) <br> ) Stephen W. Kenyon, Clerk <br> ) <br> ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Michael R. McLaughlin, District Judge.  Hon. Carolyn Minder, Magistrate Judge.

The judgment of the district court is <u>affirmed</u>.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for appellant. Mark W. Olson argued.

Ada County Public Defender's Office, Boise, attorneys for respondent. Dylan J. Orton argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This case presents an issue of statutory interpretation. Idaho Code section 20-621 authorizes commutation of county jail sentences for good behavior, making county inmates with good records while incarcerated eligible for five (5) days off for each and every month of their sentence. A prisoner's eligibility, however, is conditioned upon receiving a recommendation from the supervising county sheriff. The primary issue presented in this case is whether the statute vests the magistrate court with the discretion to reject a recommendation from a sheriff.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In December 2011, Corey Thiel (Thiel) was charged by the State of Idaho (State) with felony domestic battery. Pursuant to an agreement with the State, Thiel pled guilty to an amended charge of misdemeanor domestic battery and was placed on supervised probation.

1

Approximately one week after entry of this guilty plea, on February 29, 2012, Thiel was charged with a misdemeanor violation of a no-contact order for an incident that occurred while the battery charge was pending. On March 13, 2012, Thiel pled guilty to violating the no-contact order, and the magistrate court imposed suspended jail time and two years of unsupervised probation, while crediting time served. Under the terms of his probation, Thiel was required to comply with the terms of supervised probation established in the underlying battery case.

Less than two months thereafter, on May 2, 2012, the State moved for the court to issue a bench warrant for Thiel's arrest based on probation violations. At a June 15, 2012 hearing on the State's motion, Thiel admitted the violations, specifically regarding his failure to appear for drug testing and for providing a diluted drug test. The court reinstated Thiel on probation. Approximately four months thereafter, the State moved for a second set of probation violations, alleging that Thiel failed to maintain contact with his assigned probation officer and also failed to provide documentation that he had completed the required domestic violence treatment. At a March 15, 2013 hearing on the State's motion, Thiel admitted the violations. The court revoked Thiel's probation and imposed his original sentence of 356 days, with a credit of 67 days. Thiel was taken into custody and began serving his sentence in the Ada County Jail.

On October 15, 2013, the Ada County Sheriff's Office submitted a letter to the magistrate court recommending that Thiel be granted an early release for good behavior pursuant to Idaho Code section 20-621. Specifically, the Sheriff cited the statute and wrote, "While an inmate in the Ada County Jail, [Thiel] had a good record and performed all assigned tasks in an orderly and peaceable manner." Given this good behavior, the Sheriff recommended 55 days of early release time, or 5 days for each of the approximately 11 months of Thiel's sentence. Under this calculation, Thiel's release date would be November 4, 2013. The bottom of the letter included a signature caption for the magistrate judge, designed to facilitate the court's acceptance of the recommendation. On October 23, 2013, however, the magistrate court denied the Sheriff's request. In the caption provided the court stated, "I do <u>not</u> agree to any release. This decision will be purely up to the [Ada County Sheriff's Office], but I will <u>not</u> [illegible] permission."

On November 14, 2013, Thiel separately moved for his "immediate release" based on the Sheriff's letter. On November 15, 2013, the magistrate court denied this motion, writing, "I will not sign an order releasing an untreated, violent offender into the community. The Ada County

2

Sheriff, if he believes he has the authority to do so, may release regardless of my [expressed] concerns for safety." Thiel appealed this denial of his motion for release to the district court.

In its intermediate appellate capacity, and on an expedited basis, the district court reversed the magistrate court's decision, holding that where a county sheriff recommends an inmate be released pursuant to Idaho Code section 20-621, the magistrate court is required to follow the recommendation and release the inmate. The State timely appealed the district court's intermediate appellate decision to this Court.

### III. ISSUES ON APPEAL

1.   Whether Idaho Code section 20-621 vests the magistrate court with the discretion to reject a sheriff's recommendation for an inmate's early release based on good behavior.

2.   Whether Idaho Code section 20-621, if it provides no discretion to the magistrate court, violates separation of powers.

### IV. STANDARD OF REVIEW

> This Court exercises free review over questions of statutory interpretation and application. *Flying Elk Inv., LLC v. Cornwall*, 149 Idaho 9, 15, 232 P.3d 330, 336 (2010) (citations omitted). On review, "[a]n unambiguous statute must be given its plain, usual, and ordinary meaning. Statutory provisions should not be read in isolation but instead are interpreted in the context of the entire document." *Id.* "A statute is ambiguous where the language is capable of more than one reasonable construction." *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 388, 398, 111 P.3d 73, 83 (2005) (quotation omitted), *rev'd on other grounds by Farber v. Idaho State Ins. Fund*, 152 Idaho 495, 272 P.3d 467 (2012). However, statutory language is not ambiguous "merely because the parties present differing interpretations to the court." *State v. Doe*, 140 Idaho 271, 274, 92 P.3d 521, 524 (2004) (citing *Matter of Permit No. 36–7200*, 121 Idaho 819, 823, 828 P.2d 848, 852 (1992)).

*Farm Bureau Mut. Ins. Co. of Idaho v. Eisenman*, 153 Idaho 549, 552, 286 P.3d 185, 188 (2012).

### V. ANALYSIS

**A.   Idaho Code section 20-621 plainly vests no discretion with the magistrate court.**

The parties' dispute centers on whether Idaho Code section 20-621 vests the magistrate court with the discretion to reject a recommendation made by a county sheriff regarding an inmate's early release for good behavior. The State argues that the statute either clearly gives magistrate judges discretion in the good-time early release process, or is at least ambiguous as to the respective roles and duties of the sheriff and magistrate judge in the process. Under both scenarios, the State asserts that the legislature did not intend to give county sheriffs unbridled authority to release inmates from county jail. Thiel contends that the statute is plainly worded

3

and gives the magistrate court no discretion or authority to disregard or reject a recommendation from a sheriff in the context of good-time early releases. For the reasons outlined below, under a plain and ordinary reading of the statute, the magistrate court is vested with no discretion in the good-time early release process.

Idaho Code section 20-621 reads as follows:

> Every person serving a jail sentence in a county jail in the state of Idaho who has a good record as a prisoner and who performs the tasks assigned him in an orderly and peaceable manner, shall upon the recommendation of the sheriff be allowed five (5) days off of each and every month of his sentence, by the magistrate judge.

I.C. § 20-621.

The State argues that the statute unambiguously vests discretion with the magistrate court. Alternatively, the State asserts that the statute is ambiguous, pointing to the conflicting meanings of the terms "recommendation," "allowed," and "shall" as support. In applying the plain and ordinary meanings of these terms, the State describes a "recommendation" as "a suggestion which may or may not be followed, rather than a mandatory directive," and as an "action which is advisory in nature rather than one having any binding effect." As to the legislature's use of "be allowed," the State asserts that the phrase connotes "permission or eligibility," but does not mandate or direct acceptance. Thus, in parsing the language, the State argues that while the statute provides county sheriffs with the authority to recommend early releases under certain circumstances, it does not expressly bind or require magistrate courts to follow said recommendations. The State contends that if the legislature intended to bind the court to these recommendations, it would have made its intention clear by expressly stating "shall release" or "shall follow the recommendation for release."

The State also advances certain policy arguments in support of its position, specifically that there is "no oversight or review" of a sheriff's determination that an inmate has complied with the statute. For example, in the letter recommending Thiel's early release, the Ada County Sheriff's Office quoted the relevant language from the statute, but provided no documentation or support evidencing that Thiel's custodial time qualified as good and peaceable. Lastly, the State contends that an interpretation of the statute offering no judicial discretion or review endangers certain rights held by Idaho crime victims pursuant to Idaho Code section 19-5306(1)(e), specifically the right to be heard at all criminal justice proceedings including those where a defendant's release from custody is considered. The State argues this right to be heard "would be

meaningless if a magistrate court has no authority other than to follow the mandatory directive of a county sheriff to release an inmate."

Thiel argues that the statute is plainly worded and unambiguous, and asserts that the State's focus on the terms "recommendation" and "allowed" overlooks and disregards the "statute's controlling imperative 'shall.'" Further, Thiel relies on an opinion issued by this Court interpreting an earlier version of the same statute. While the statute has since been slightly adjusted, Thiel argues that the Court has already recognized law enforcement's complete authority to make this determination, leaving no statutory discretion for the court. As such, Thiel contends that the statute creates a mere ministerial duty for the magistrate court, with no substantive discretion in the process.

"'The objective of statutory interpretation is to give effect to legislative intent.'" *State v. Doe*, 156 Idaho 243, 246, 322 P.3d 976, 979 (2014) (quoting *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007)). "The interpretation of a statute 'must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written.'" *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (quoting *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003)). Thus, this Court's role is typically limited to "appl[ying] the plain and ordinary meaning of the terms and, where possible, [giving effect to each and] every word, clause and sentence." *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 210, 76 P.3d 951 954 (2003).

Following the plain language of Idaho Code section 20-621, the authority to determine a good-time early release is vested solely with the sheriff. Use of the term "shall" signals clear legislative intent. The State's arguments parsing the meanings and connotations of "recommendation" and "allowed" are unpersuasive and ignore the operative and controlling imperative "shall" at the beginning of the phrase at issue. "Shall" acts as a qualifier to all other terms within the phrase, including "be allowed." Thus, an ordinary reading of the statute establishes that this determination rests entirely within the province of the sheriff and leaves no room for judicial discretion in the process.

The Court's precedent with this statute supports this reading. Without expressly stating that the magistrate court lacks discretion, the Court previously held that the statute at issue vests authority with law enforcement to determine whether an inmate qualifies for early release under

5

the statute. *See State v. Hughes*, 102 Idaho 703, 639 P.2d 1 (1981). The *Hughes* Court held that under Idaho Code section 20-621, sentences of county inmates are "subject to the authority of the sheriff . . . to approve not more than five (5) days per month reduction for good time." *Id.* at 705, 639 P.2d at 3. If the sheriff has this authority, then by extension, the magistrate court does not.

"If [a] statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Schwartz*, 139 Idaho at 362, 79 P.3d at 721. "We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature." *City of Sun Valley v. Sun Valley Co.*, 123 Idaho 665, 667, 851 P.2d 961, 963 (1993). Idaho Code section 20-621 is not ambiguous. As such, this Court does not construe it but simply follows it as written.[1]

As noted by the district court in overturning the magistrate court on intermediate appeal, the statute, as written, creates a ministerial duty for the court. We affirm the district court's finding that the statute is ministerial and does not allow for judicial discretion. A ministerial act or duty "involves obedience to instructions, but demands no special discretion, judgment, or skill. [A ministerial act] is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Ausman v. State*, 124 Idaho 839, 842, 864 P.2d 1126, 1129 (1993) (quoting Black's Law Dictionary 899 (6th ed. 1990)). A ministerial duty is "[o]ne regarding which nothing is left to discretion—a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist." *Id.* If a statute or rule is "clear,

---

[1] When the legislature has vested judicial discretion in similar contexts, it has done so expressly by using clear and obvious language. Idaho Code section 19-2521 is instructive in this regard. It outlines factors for courts to consider in deciding whether a convicted defendant is to be placed on probation or imprisoned. In section 19-2521, the legislature expressly authorized or made reference to judicial discretion, i.e. "while not controlling the discretion of the court." I.C. § 19-2521(2). This clearly signals legislative intent regarding the judiciary's authority, and the Court has long recognized judicial discretion in accepting or rejecting law enforcement recommendations in this context. *State v. Coassolo*, 136 Idaho 138, 143, 30 P.3d 293, 298 (2001) ("The decision to relinquish jurisdiction or grant probation is committed to the district judge's discretion. The [law enforcement] recommendation is purely advisory and is in no way binding upon the court's decision. [A] judge need not follow the recommendation of [law enforcement] and the ultimate decision is discretionary . . . .") (citations, alterations, and quotation marks omitted). In the statute at issue in this action, however, there is no similar express grant or reference to judicial discretion. If the legislature intended to vest the judiciary with discretion in the good-time early release process, Idaho Code section 20-621 would have expressly authorized or referenced the court's discretion. With minimal additions, the statute could have been written as follows to achieve this result: ". . . shall upon the recommendation of the sheriff *and with the concurrence of the magistrate judge* be allowed five (5) days off of each and every month of his sentence, by the magistrate judge." This would have conferred discretion. As written, however, the statute does not expressly or impliedly grant discretion to the judiciary.

specific, and mandatory with respect to what a judge must do[,] . . . [t]his is a ministerial act as opposed to a discretionary or judicial one." *Ausman*, 124 Idaho at 842–43, 864 P.2d at 1129–30.

The State relies on statutory construction to support its argument that there is uncertainty regarding the magistrate court's role in the good-time release process. Specifically, the State contends that the legislature would not have included the magistrate judge in the statute if it did not intend for the court to have some discretion in the matter. This argument is unavailing. While the magistrate judge is certainly included in the statutory scheme, the statute vests no discretion with the judge. Rather, the magistrate judge's designated role is a ministerial one. Under the statute, if a sheriff finds that an inmate in county jail has a good custodial record and has performed the tasks assigned in an orderly and peaceable manner, and the sheriff so recommends, the magistrate judge is required to commute five days off of each and every month of the inmate's sentence. The magistrate court is included in the process for procedural clean-up reasons; more plainly, for purposes of administrative record-keeping and finality, as well as serving as a potential mechanism for providing crime victims with notice of the act of release, there must be some official court record memorializing early releases.

Beyond the statute at issue, the State argues that if Idaho Code section 20-621 vests no discretion with the magistrate judge, then it endangers certain rights held by Idaho crime victims under the Victims' Rights Act, Idaho Code section 19-5306. This argument is also not persuasive. Under the pertinent portions of the Victims' Rights Act, a crime victim has the right to be notified of and an opportunity to be heard "at all criminal justice proceedings considering a plea of guilty, sentencing, incarceration, placing on probation or release of the defendant unless manifest injustice would result," as well as the right to be notified when a defendant is released from custody. I.C. § 19-5306(1)(d)-(e), (j). Statutes that relate to the same subject matter "are to be construed in harmony, if reasonably possible." *State v. Barnes*, 133 Idaho 378, 380, 987 P.2d 290, 292 (1999). Thus, we must reconcile apparent inconsistencies between Idaho Code section 20-621 and the Victims' Rights Act if it is possible to do so. *Id.* at 382, 987 P.2d at 294.

The statutes at issue here can easily be harmonized, as there is no apparent conflict between the good-time early release statute and the Victims' Rights Act. The Victims' Rights Act states that a crime victim is entitled to be notified of any proceeding related to a defendant's release, as well as when a defendant is actually released. I.C. § 19-5306(1)(d), (j). Nothing in Idaho Code section 20-621 prevents this notice from occurring. Further, the Victims' Rights Act

7

provides victims with an opportunity to be heard at proceedings considering, *inter alia*, sentencing, incarceration, or release of a defendant. I.C. § 19-5306(1)(e). The State contends it would be meaningless for a victim to be heard at a good-time early release hearing if the court lacks the discretion to weigh, consider, or otherwise act on the victim's concerns. While this is true, it does not violate the Victims' Rights Act.

The Victims' Rights Act gives crime victims a voice in proceedings related to pleas, sentencing, incarceration, probation, or release. However, an impact can only be had in proceedings where judicial discretion is involved. The Victims' Rights Act creates a right to be heard at proceedings "considering" a defendant's possible release, which connotes the exercise of discretion. As stated above, the good-time early release process involves no exercise of judicial discretion. Since the court has no discretion in the process outlined in Idaho Code section 20-621, the legislature did not intend for a crime victim's voice to impact these proceedings. Rather, a ministerial duty is imposed on the court. Once a recommendation has been made by the sheriff, there is nothing left to consider. Thus, the two statutes can be construed harmoniously as nothing in Idaho Code section 20-621 conflicts with Idaho Code section 19-5306.

For all of these reasons, this Court holds that the respective roles and duties of the sheriff and magistrate court in the early release process outlined in Idaho Code section 20-621 are clearly defined. Idaho Code section 20-621 is unambiguous and a plain-language reading establishes that a magistrate judge exercises no oversight or discretion in the good-time early-release process. Rather, the duty imposed on the magistrate court is a ministerial one. The legislature intended to grant the sheriff commutation authority for inmates in county jail, with a maximum possible reduction of five days off for each month of an inmate's sentence. In receiving recommendations from the sheriff, the magistrate judge was meant to have no discretion in the process. The district court's decision overturning the magistrate court on intermediate appeal is affirmed.

**B.      Idaho Code section 20-621 does not violate separation of powers.**

If the statute is held to vest no discretion with the magistrate court, the State argues that it violates the Idaho Constitution by improperly divesting sentencing authority from the judiciary. For the reasons outlined below, this argument fails.

The Idaho Constitution prohibits any branch of government from exercising powers that properly belong to another branch, unless expressly directed or permitted by the State

Constitution. IDAHO CONST. art. II, § 1. "Our State Constitution is a limitation, not a grant of power, and the [l]egislature has plenary powers in all matters, except those prohibited by the Constitution." *Rich v. Williams*, 81 Idaho 311, 323, 341 P.2d 432, 439 (1959). "Because the Constitution is not a grant of power, there is no reason to believe that a Constitutional provision enumerating powers of a branch of government was intended to be an exclusive list. The branch of government would inherently have powers that were not included in the list." *Idaho Press Club, Inc. v. State Legislature*, 142 Idaho 640, 642–43, 132 P.3d 397, 399–400 (2006).

"[T]he powers reserved to the several departments of the government, but not specifically enumerated in the [C]onstitution, must be defined in the context of the common law." *State v. Branson*, 128 Idaho 790, 792, 919 P.2d 319, 321 (1996).

> It was early held by this [C]ourt that the power to define crimes and prescribe penalties belongs to the legislative department of government; that the power to try offenders, and to enter judgment convicting and sentencing those found guilty, belongs to the judicial department; [and] that the power and prerogative of granting pardons, paroles or commutations belong to the executive department.

*Spanton v. Clapp*, 78 Idaho 234, 237, 299 P.2d 1103, 1104 (1956).

The statute at issue in this case, Idaho Code section 20-621, is entitled "Commutation for good behavior" and acts as a form of sentence commutation. The good-time early release statute does not encroach upon the powers of the judiciary in violation of the Idaho Constitution for the following reasons. For one, and as recognized by the *Spanton* Court, the judiciary has constitutionally recognized authority in the sphere of conviction and judgment, but not in the period following the entry of judgment. *Id.* at 238, 299 P.2d at 1104. The good-time early release program falls outside of the realm of conviction and judgment because it impacts only the period following the entry of judgment. Two, the executive branch wields the power to pardon and commute sentences, and the good-time early release statute properly places commutation authority in the hands of an executive agency, the supervising county sheriff's office. Lastly, the early release scheme can be construed as falling within the legislature's power to fix punishment. In defining crimes and fixing punishment, the legislature "has great latitude" in the exercise of this power. *Malloroy v. State*, 91 Idaho 914, 915, 435 P.2d 254, 255 (1967). The scheme at issue here simply reduces an inmate's sentence if certain conditions are met. The legislative pronouncement that an inmate is entitled to an early release upon the recommendation of the

9

sheriff is a legitimate exercise of the legislative power to define crimes and their penalties and does not involve resentencing inmates. For all of these reasons, Idaho Code section 20-621 does not violate separation of powers under the Idaho Constitution.

In arguing that the statute improperly divests sentencing authority from the judiciary, the State relies on this Court's holding and rationale in *State v. McCoy*, 94 Idaho 236, 486 P.2d 247 (1971). *McCoy* involved an attempt by the legislature to establish, by statute, a mandatory minimum sentencing scheme. The *McCoy* Court struck down the statute based on the judiciary's common law authority to suspend a sentence. The Court in *State v. Branson* explained the *McCoy* holding as follows: "[T]he [common law] authority possessed by the courts to sentence necessarily included the power to suspend that sentence, [thus] this power may not properly be abrogated by statute. It is an 'inherent right' of the judiciary and one which the separation of powers doctrine places beyond legislative mandate." *Branson*, 128 Idaho at 792, 919 P.2d at 321. Thus, the *McCoy* Court held that the legislature could not enact a mandatory minimum sentence absent a constitutional amendment, given that "the judiciary possessed the power at common law to suspend a sentence" and a mandatory minimum sentence interferes with this power. *McCoy*, 94 Idaho at 240, 486 P.2d at 251.

In response to the Court's holding in *McCoy*, the legislature proposed and the people adopted an amendment to Article V, Section 13 of the Idaho Constitution. IDAHO CONST. art. V, § 13. This amendment granted the legislature the constitutional authority to enact mandatory minimum sentences. After the amendment to Article V, Section 13, it was no longer unconstitutional for the legislature to issue a mandatory minimum sentence infringing upon the judiciary's inherent, common law authority to exercise its discretion to suspend a sentence.

The facts presented in this case are not the same as those in *McCoy*. The Court's holding in *McCoy* was premised on courts possessing, at common law, the power to suspend a sentence. However, a suspension is not the same as a commutation. For one, "[a] commutation diminishes the severity of a sentence, e.g. shortens the term of punishment," while a suspension delays the entry of a sentence. *Standlee v. State*, 96 Idaho 849, 852, 538 P.2d 778, 781 (1975). More importantly, whereas the authority to suspend a sentence rests with the judiciary at common law, courts do not similarly possess the power at common law to commute a sentence. A commutation is inherently a creature of the executive branch. For these reasons, the State's reliance on *McCoy* is misplaced.

10

The legislature has the constitutional authority to identify and define criminal acts, as well as the power to prescribe penalties for these crimes. If it has the power to do these things, it surely has the power to enact a targeted early-release scheme to lessen the penalties for these crimes. Furthermore, the legislature has the authority to delegate the good-behavior determination to an executive branch agency. Thus, the good-time early release program contained in Idaho Code section 20-621 does not unconstitutionally infringe upon the judiciary's inherent sentencing authority, and does not violate separation of powers principles.

## VI. CONCLUSION

This Court affirms the judgment of the district court that the statute vests no discretion with the magistrate judge. Further, this Court holds that the statute itself does not violate separation of powers principles under the Idaho Constitution.

Chief Justice BURDICK, Justices EISMANN, J. JONES, and Justice *pro tem* KIDWELL, CONCUR.